**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William Edward HAYES, Jr.,**
**Defendant-Appellant.**

**No. 74–1826.**

United States Court of Appeals,
Sixth Circuit.

July 11, 1975.

**676**

James L. Cobb, Jr., Cobb, Combs, Beasley & Oldfield, Peter F. Beasley, W. Robert Lotz, Covington, Ky., for defendant-appellant.

Eugene E. Siler, Jr., U. S. Atty., Robert F. Trevey, Lexington, Ky., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, ENGEL, Circuit Judge, and DUNCAN,* District Judge.

DUNCAN, District Judge.

Appellant William Edward Hayes, Jr. urges this Court to find error in the District Court's pretrial refusal to suppress physical objects which were later admitted into evidence at his trial. In our view there was reversible error, and certain evidence ought to have been suppressed.

The facts important to our decision do not conflict. Undisclosed but reliable informants advised agents of the Drug Enforcement Administration that a sale of cocaine was to occur in the greater Cincinnati area. They were informed that one of the participants would be staying at the Holiday Inn in Fort Mitchell, Kentucky. In addition, an undercover agent gained the knowledge that on August 13, 1973, Thomas M. Strike was in possession of a quantity of cocaine, and that he was going to meet persons from the Washington, D. C. area and persons from other areas of the country for a drug transaction. Later that same day Strike was seen with Hayes.

On August 14, 1973, Agent Powell checked guest registration at the Holiday Inn and discovered that room number 225 was occupied by Jose Ringgold of Alexandria, Virginia, a suburb of Washington, D. C. The agents' surveillance revealed that Strike and Hayes occupied separate rooms at the President Motor Inn which was about a mile from the Holiday Inn, and that William Doyle shared Ringgold's room at the Holiday Inn. The four men—Hayes, Strike, Doyle and Ringgold—were all placed under surveillance.

Sometime between 9:00 and 10:00 p. m. on August 14, 1973, Hayes entered Ringgold's room; thereafter, Hayes, Doyle and Ringgold exited the room, entered an automobile and drove towards Cincinnati. They were followed by about eight law enforcement agents. The car, while moving through an area of the highway under construction, suddenly veered right and knocked over several plastic pylons. The agents, believing their presence had been detected and that the three men were attempting to flee, stopped the car. All of the men as well as the vehicle were searched; however, no narcotics or weapons were found. The men were then handcuffed and returned to the Holiday Inn.

While the three stood outside Ringgold's room under arrest, the agents, using Ringgold's key, entered. Although the room appeared unoccupied, Agent Powell observed a small aluminum foil packet on the tile portion of the floor leading to the bathroom. Recognizing the packet to be similar to those used for packaging cocaine, he seized it; later, it was found to contain cocaine. After discovering the packet, the officers determined that the appropriate time to procure a search warrant had arrived. Failing to locate either of the two local Fed-

* The Honorable Robert M. Duncan, Judge, United States District Court for the Southern District of Ohio, sitting by designation.

eral Magistrates or the District Judge, they decided to search the room without a warrant. Agent Powell stated that he had had no experience in requesting or procuring search warrants from local state judges or justices of the peace. A search of the lining of a sportcoat found in the room resulted in the discovery of several plastic bags of cocaine.

The agents then went to the President Motor Inn to arrest Strike. As they approached Hayes' room, Strike fled from it, throwing away a plastic vial as he ran. This was subsequently recovered, analyzed and found to contain cocaine. In the company of the motel security officer the agents then entered the room which Strike had just exited. In plain view they observed a gram scale and a strainer with residue of a cutting agent frequently used to dilute cocaine, along with personal items belonging to both Hayes and Strike. With a pass key the agents thereafter entered Strike's room, conducted a search, and seized two loaded pistols and a plastic bag containing more than an ounce of cocaine.

■ Appellant was indicted, tried by jury, and convicted of one count in violation of 21 U.S.C. § 846, and three counts in violation of 21 U.S.C. § 841(a)(1). Ringgold and Strike were also indicted. Strike and Hayes were joined for trial; however, because of the illness of Strike's counsel, Hayes was tried alone. The District Judge in denying appellant's motion to suppress suggested a need for quick action in the apprehension of drug traffickers, but apparently concluded that the searches were incident to the arrests.

The United States Supreme Court in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), discussed the constitutional boundaries of a search incident to an arrest. The Supreme Court classified as reasonable a search for weapons which might be used to resist arrest or effect an escape, a

search for evidence on the arrestee's person in order to prevent its concealment or destruction, and a search of the area into which an arrestee might reach in order to grab a weapon or evidentiary items. *Chimel v. California, supra* at 762–63, 89 S.Ct. 2034. Because the arrests in the instant case all occurred well outside the searched rooms, the three warrantless room searches mentioned hereinabove cannot be justified as having been incident to an arrest.

Justification for a warrantless search has also been found where there exists both probable cause and an exigent circumstance. An inquiry to determine whether an exigent circumstance exists necessitates a balancing of the individual's right to be free from unreasonable intrusions against society's right to investigate crime quickly and adequately. See *Johnson v. United States,* 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). This balancing concept enables courts to respond on a common sense basis to difficult problems faced by law enforcement officials working in a travel-oriented society where the object of their efforts may be minute and readily destructible.

Agent Powell testified that the entry into the room at the Holiday Inn was made to "secure" it. From what or from whom it was to be secured is never made clear. With reference to a similar argument in another narcotics case, this Court recently stated:

> The District Judge was clearly right in finding that the government had not established exigent circumstances to warrant the forcible entry without search warrant. This case did not involve hot pursuit. *Nor did the government present proofs which established its theory that the evidence it sought was in danger of destruction.* United States v. Griffin, 502 F.2d 959, 961 (6th Cir. 1974). (Emphasis supplied.) [1]

1. By its footnote to *Griffin,* this court stated that this Circuit has never had occasion to pass upon the holding in *United States v. Rubin,* 474 F.2d 262 (3rd Cir.) cert. denied sub nom., *Agran v. United States,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68. Nothing in the opinion in the present case is intended to pass upon the holding of *Rubin.*

 In the case at bar the government witness suggested that it was possible that someone could have entered Ringgold's room and destroyed or removed the stash of drugs. Possibility is simply not enough. As *Griffin* suggests, it is incumbent upon the government to present proof which indicates that the evidence sought was in danger of destruction or removal. In the instant case, the agents had knowledge from their surveillance and from informants' tip of the identity of the persons involved in the anticipated drug transaction. They possessed no information that anyone other than the four persons mentioned above were involved. Moreover, the record does not reflect why the agents could not "have easily prevented any such destruction or removal by merely guarding the door." *United States v. Jeffers*, 342 U.S. 48, 52, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951).

There is evidence that Strike was in northern Kentucky unsurveilled during the agents' pursuit and arrest of Hayes, Ringgold and Doyle. However, there is no showing of any probability that Strike had been in the room at the Holiday Inn, intended to go there or had access to it. Moreover, Strike was under arrest when his and Hayes' rooms at the President Motor Inn were searched.

Since the agents had already arrested all persons whom they had reason to believe were involved in the drug scheme, and since they have not shown that it was unreasonable to expect that they could have guarded the door while they sought a judicial officer and a search warrant, we cannot find an exigent circumstance in this case which justifies the warrantless entries by the agents. "We cannot be true to that [Fourth Amendment] and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

Evidence seized from the three motel rooms should therefore have been suppressed. The judgment of conviction of Hayes is reversed and the case remanded.