STATE OF NEBRASKA, APPELLANT, V. MARK POIT,
APPELLEE.

344 N.W.2d 914

Filed February 24, 1984.  No. 83-696.

Patrick Vipond, for appellant.

John F. Vipperman of Anderson, Vipperman, Hinman, Hall & Kovanda, for appellee.

KRIVOSHA, C.J.

This appeal is brought pursuant to the provisions of Neb. Rev. Stat. § 29-824 (Reissue 1979), which provides in part that the State shall have the right to appeal a trial court's order granting a motion to suppress to a single judge of the Supreme Court at chambers. See, also, *State v. Hagen*, 180 Neb. 564, 143 N.W.2d 904 (1966).

The appellee, Mark Poit, was charged on an information filed in Hall County District Court with the offense of possession of a controlled substance other than marijuana, to wit, lysergic acid diethylamide

(LSD), in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1979). The record before me discloses that on February 14, 1983, an investigator of the Nebraska State Patrol (Investigator) applied for and received a search warrant for "[t]he basement apartment located under a wood frame residence at 818 West 8th Street, Grand Island, Hall County, Nebraska, Apt. #4." The search warrant specifically authorized the Investigator to conduct a search of the residence for the purpose of "discovery and seizure of property, to-wit: lysergic acid diethylamide (LSD) and other controlled substances, drug paraphernalia and items indicating or showing the identities of the person or persons living in the residence at 818 West 8th, Apt. #4 . . . ."

Armed with the search warrant and assisted by other law enforcement officers, the Investigator executed the search warrant on February 14, 1983, at approximately 10 p.m. After knocking on the door of the premises and having it opened by Poit, the Investigator entered.

Upon entering the apartment the Investigator searched Poit and went through his wallet, which Poit had removed from his pocket at the Investigator's request. During the course of the examination of the wallet, the Investigator discovered 10 "hits" of LSD. A search was then conducted of the premises, pursuant to the search warrant, and a number of other items were seized, including marijuana and drug paraphernalia. Poit was arrested and charged with possession of a controlled substance, to wit, LSD.

On August 5, 1983, Poit filed a motion to suppress the evidence seized from his residence. He amended the motion on August 15, seeking to suppress the evidence seized from his person. The trial court generally overruled the motion to suppress the items obtained in the house pursuant to the warrant, but did grant the motion to suppress all evidence

seized from Poit's wallet. It is from that order which the State now appeals.

The State argues to us that the trial court's order should be overruled because a warrant to search a place based upon probable information that the resident of that place has committed or is committing a crime in that place authorizes the search of the residence as reasonably and necessarily within the scope of the warrant, and includes a search of the individual found within the residence. Poit, on the other hand, argues that the order of the trial court suppressing the evidence obtained from his wallet was correct because a warrant authorizing the search of a particular place or premises does not give the officers the right to search persons who may be found in it. I believe, however, that because of an exception to the general rule concerning search and seizure, I need not address that issue.

In passing, I note that the trial court was correct in overruling Poit's motion to suppress the evidence obtained in the premises pursuant to the search warrant issued. I believe that the affidavit filed in this case sufficiently established probable cause to justify the magistrate in issuing a warrant to search the premises. It is by reason of my determination that the warrant was lawfully issued that I find the trial court's order suppressing the LSD found in Poit's wallet was in error.

Not all evidence obtained is inadmissible simply because during the course of an investigation some illegal act was committed by the government. There are several well-recognized exceptions to the exclusionary rule, among which are attenuation and the "plain-view" doctrine. See, *United States v. Ceccolini*, 435 U.S. 268, 98 S. Ct. 1054, 55 L. Ed. 2d 268 (1978), *Nardone v. United States*, 308 U.S. 338, 60 S. Ct. 266, 84 L. Ed. 307 (1939); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). A third exception, and the one applicable to this case, is what has come to be known as the "in-

evitable discovery'' rule. This exception allows illegally obtained evidence to be admitted if it would have been discovered in the course of a proper investigation. While the U.S. Supreme Court has never directly passed upon this exception, it has impliedly suggested its validity. See *Brewer v. Williams*, 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977). And the exception has been approved by a number of federal circuits, including the first, second, third, fifth, seventh, eighth, ninth, and eleventh. See, *United States v. Bienvenue*, 632 F.2d 910 (1st Cir. 1980); *United States v. Ceccolini*, 542 F.2d 136 (2d Cir. 1976), *rev'd on other grounds* 435 U.S. 268, 98 S. Ct. 1054, 55 L. Ed. 2d 268 (1978); *Government of Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir. 1974); *United States v. Brookins*, 614 F.2d 1037 (5th Cir. 1980); *United States ex rel. Owens v. Twomey*, 508 F.2d 858 (7th Cir. 1974); *United States v. Apker*, 705 F.2d 293 (8th Cir. 1983); *United States v. Kandik*, 633 F.2d 1334 (9th Cir. 1980). Only the sixth circuit has expressly rejected the inevitable discovery exception. See *United States v. Griffin*, 502 F.2d 959 (6th Cir. 1974).

I believe an examination of the rationale underlying the exception is controlling in this case and should be applied. The rationale is set out in some detail in the opinion by the U.S. Court of Appeals for the Fifth Circuit in *United States v. Brookins, supra.* There, the fifth circuit noted at 1044: '' '[T]he exclusionary rule does not come into play merely because the proffered evidence is in fact the product of an illegal act. If . . . the illegal act merely contributed to the discovery of the allegedly tainted information and . . . such information would have been acquired lawfully even if the illegal act had never transpired, the presumptive taint is removed, and the apparently poisoned fruit is made whole. In other words, if . . . the illegal act was not an indispensable cause of the discovery of the proffered evidence, the exclusionary rule does not apply.' ''

The fifth circuit then went on to note at 1046-47: "In the fourth amendment context, the 'single and distinct' purpose for the exclusionary rule is deterrence of police violations of that constitutional protection against unreasonable searches and seizures. [Citations omitted.] In the fifth and sixth amendment context, the 'prime purpose' of the exclusionary rule as applied to the fruits of police illegality is deterrence of government denial of the self-incrimination privilege or the counsel right [citations omitted], but a secondary purpose is ensuring the trustworthiness of incriminating statements [citations omitted]. The attenuated connection exception and the independent source exception are justified because it is unlikely that suppression of attenuated or independently discovered derivative evidence would deter police misconduct and would bar untrustworthy evidence. [Citations omitted.] This justification also applies to the inevitable discovery exception.

"Deterrence is only marginally served by suppression of testimony derived from illegally obtained evidence if such testimony would have been discovered without the illegal actions, because the motivation for the illegal search or interrogation was not the quest for derivative evidence that the police were already pursuing and would probably have been discovered in any event."

In the instant case the evidence is without contradiction that the entry into Poit's home was pursuant to a validly issued search warrant. The evidence is further clear that, pursuant to that validly issued search warrant, the officers, had they first searched the premises rather than Poit, would have discovered the illegal drugs and drug paraphernalia and would have, pursuant to the warrant, arrested Poit. Having therefore arrested Poit for possession of marijuana and illegal drug paraphernalia, they would have conducted a search of his person. That search would have disclosed the presence of the LSD

in Poit's wallet, and therefore the LSD would have been "inevitably discovered." *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973). To suppress the evidence because it was found, in essence, "out of order" does not seem to me to fulfill any of the reasons for which the exclusionary rule was created.

In reaching my conclusion I think it of value, however, to further note the admonitions of the fifth circuit in the *Brookins* case. The fifth circuit noted at 1048: "This approach does not mean that any illegally obtained evidence can be admitted simply because law enforcement officials assert that it would have been inevitably discovered. The mere assertion of inevitable discovery must fail. After the accused has challenged the legality of the witness' acquisition and of the use of the witness' testimony, the police must show that when the illegality occurred they possessed and were actively pursuing the evidence or leads that would have led to the discovery of the challenged witness and that there was a reasonable probability that that witness would have thereby been discovered. The prosecution must bear the burden of proof on this issue. [Citations omitted.] The court then must find that reasonable probability of subsequent discovery existed based on this showing and the record generally. Our holding, therefore, is that, despite a prior illegality which led to the discovery of a witness, that witness' voluntary testimony is admissible if the prosecution proves that the witness and his testimony would have been discovered in a lawful manner, had the prior illegality not occurred, by virtue of ordinary investigations of evidence or leads already in their possession."

While the *Brookins* case talks about witnesses, as noted by the decision of the U.S. Court of Appeals for the Eighth Circuit in *United States v. Apker*, 705 F.2d 293 (8th Cir. 1983), the "inevitable discovery" rule applies not only to witnesses but to tangible evidence as well.

For that reason the order of the district court for Hall County, Nebraska, suppressing evidence of lysergic acid diethylamide found in the wallet of Mark Poit is reversed.

REVERSED.