697 So.2d 907 (1997)
Charles BUTLER, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 95-05193.
District Court of Appeal of Florida, Second District.
July 18, 1997.
Rex Golden, St. Petersburg, for Appellant.
*908 Robert A. Butterworth, Attorney General, Tallahassee, and Tonja R. Vickers, Assistant Attorney General, Tampa, for Appellee.
PARKER, Chief Judge.
Charles Butler, Jr., appeals the judgment adjudicating him guilty of possession of cocaine, possession of marijuana, and possession of paraphernalia, following a no contest plea. Butler argues that the trial court erred in denying his dispositive motion to suppress evidence. We agree and reverse.
On September 12, 1995, Officer Harris received information from a reliable, confidential informant (CI) that crack cocaine could be found at a Clearwater residence. The CI told Officer Harris that a black male named Charles was the tenant at this address and that the alleged contraband was in a film canister located on a dresser in Charles' bedroom.
Officer Harris drove the CI past the residence to confirm its location. Officer Harris then returned to the police station. Officer Harris and six fellow officers returned to the residence later that day without seeking to obtain a search warrant.
Officer Harris testified that upon their arrival he observed a female, Francis Bell, standing at the top of the landing near the doorway of the residence. Officer Harris identified himself as a police officer and asked Bell to come down and speak with him. Bell ran inside the residence. Officer Harris testified that because he feared that evidence would be destroyed, he immediately ran up the stairs and into the apartment through the open door, followed by the other officers. Officer Harris was carrying his firearm in his hand. The officers conducted a protective sweep of the premises and discovered that only Butler and Bell were inside. Officer Harris then placed both Butler and Bell in handcuffs for the safety of the officers.
Officer Harris read Butler his Miranda warnings and told Butler that he had received reliable information that there was crack cocaine inside the residence. Officer Harris informed Butler that if he did not give him permission to search the premises he would get a search warrant. Officer Harris also told Butler that if Butler consented to the search, he would make a note to the state attorney's office that Butler cooperated in that regard. Butler's response was, "What's in it for me?" Officer Harris told Butler again that he would inform the state attorney if Butler cooperated.
Butler consented to the search. Officer Harris seized several pieces of crack cocaine in Butler's bedroom and arrested Butler. Subsequent to the arrest, the officers conducted a search of Butler's person and found marijuana which they seized. At the police station, Butler signed a written form confirming that he had given his verbal consent to the search.
The trial court found that the observation of a woman running through an open door, without more, did not constitute exigent circumstances to enter the home without a search warrant. See Alderton v. State, 438 So.2d 1000 (Fla. 2d DCA 1983). In the absence of exigent circumstances or permission, the police clearly may not enter a home without a search warrant simply because they think they have probable cause to believe evidence of a crime may be found therein. Id. at 1001; United States v. Griffin, 502 F.2d 959 (6th Cir.), cert. denied, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974). The trial court correctly concluded that because the police officers did not have exigent circumstances or permission, the warrantless entry into Butler's residence was illegal.
Despite this conclusion, the trial court denied Butler's motion to suppress finding that there was clear and convincing evidence that Butler's consent to search was freely and voluntarily given. The trial court's determination was based on Butler's inquiry, "What's in it for me?" The trial court found that the inquiry was an attempt to negotiate which caused Butler to consent to the search.
The issue in this case is whether Butler's consent to search was valid where it was obtained after illegal police activity. In Norman v. State, 379 So.2d 643 (Fla.1980), the supreme court held:
[W]hen consent [to search] is obtained after illegal police activity such as an illegal search or arrest, the unlawful police action *909 presumptively taints and renders involuntary any consent to search. The consent will be held voluntary only if there is clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action.
Id. at 646-47 (citations omitted). Therefore, Butler's consent initially must be presumed involuntary and it is the state's burden to overcome this presumption. Id. at 647.
In this case, seven police officers illegally entered Butler's residence, handcuffed Butler and Bell, and told Butler that they would obtain a warrant to search his residence unless he consented to the search. The officers did not inform Butler that he had a constitutional right to refuse the search.
In this context, Butler's inquiry, "What's in it for me?" by itself, does not amount to clear and convincing evidence of a break in the chain of illegality sufficient to dissipate the taint of the prior illegal police conduct. Norman, 379 So.2d at 647; cf. State v. Paul, 638 So.2d 537 (Fla. 5th DCA 1994), review denied, 654 So.2d 131 (Fla.1995) (holding that taint of illegal stop may be dissipated when defendant consents to search after being advised of constitutional right to refuse consent).
In Reynolds v. State, 592 So.2d 1082, 1086 (Fla.1992), the Florida Supreme Court reviewed a "consent to search" that was obtained after illegal police activity. Like Butler, the defendant in Reynolds was handcuffed and confronted by several police officers prior to giving his consent to search. The Reynolds court held that those factual circumstances did not present clear and convincing evidence that the consent was voluntary and not the product of the illegal police action. Id. at 1086-87. While the supreme court limited its holding in Reynolds to the facts of that case, the similarities between Reynolds and this case cannot be ignored.
Although the trial judge's findings of fact come to the appellate court clothed in a presumption of correctness, the presumption must fail in this instance. The trial judge's finding that Butler's consent was freely and voluntarily given is clearly erroneous where the court did not find a "break in the chain of illegality" sufficient to overcome the taint of the prior illegal police conduct. Norman, 379 So.2d at 647.
Accordingly, we reverse and remand this cause with directions to the trial court to enter an order granting Butler's motion to suppress.
FULMER and NORTHCUTT, JJ., concur.